## NEWTON v. ODOM.

1. Wills—Fee Simple Estate.—A devise to my wife for life subject to provisions hereinafter made out of same for my children with remainder to the children, and subsequent provision that the children shall have the part set apart to them during life of wife without rent, gives them a fee simple title to lands so set apart to them, and a further provision that if a daughter so receiving a portion should die without issue, her share to revert to the sons, gives the sons a fee simple in share of daughter dying without issue during life of the wife.

2. Rents—Administrator—Agricultural Lien—Remaindermen.— Where a life tenant dies after March first, rent contracts made before that date for the year go to the personal representative of life tenant, under Rev. Stats., 1893, sec. 2049; and remaindermen cannot claim double rent after notice to tenant in possession to quit and disregard thereof for three months, as such a case does not fall under

1—67

Rev. Stats., 1893, sec. 1927, but under secs. 1924, 1925 and 1926; but if remaindermen had such claim, they could not enforce it under agricultural lien law.

Before WATTS, J., Marlboro, January, 1901.    Affirmed.

Proceeding under lien law by R. L. and T. M. Newton against Sarius M. Odom.    From Circuit order dismissing the proceedings, the petitioners appeal.    The following is a copy of the will of Younger S. Newton in question here:

"The State of South Carolina, County of Marlboro.

"I, Younger S. Newton, being of sound and disposing mind and memory, do make, ordain, publish and declare this to be my last will and testament, in manner and form following, hereby revoking all former wills made by me:

"*Item First.*—It is my will and desire that all my just debts and funeral expenses, including a suitable monument to my grave, be paid from my personal estate, as hereinafter more particularly named.

"*Item Second.*—I give, bequeath, and devise to my beloved wife, Sarah, all my landed estate for and during the term of her natural life, subject, however, to the provision hereinafter made out of the same for my children.    I also bequeath to her all my personal estate, including money left by me, subject also to the terms of Item Sixth, hereinafter contained.

"*Item Third.*—I give, bequeath, and devise the interest in remainder after the termination of said life-estate in my said lands to my children, Lucy Ellen Odom, Mary Frances Terry, Robert L. Newton, and Thomas M. Newton, and they are each to have the portion laid off to him and her without rent during the life of my said wife, and after death such portion laid off to each is to belong to him and her, and then the remainder of the lands is to be sold and the proceeds equally divided among my said children, share and share alike.

"*Item Fourth.*—The land which I devise in third clause above to my daughters, Mary Frances and Lucy Ellen, I give

REP.]                    April Term, 1903.

to them on the condition that should they, or either of them, die leaving no issue of their bodies, them or either of them surviving, that the same revert to my estate and go under the terms of this Will to my said sons, share and share alike; the child or children of either of said sons dying to take his share; but if either of my said daughters leaves issue her surviving, such issue is to take the portion given to the mother represented by them.

"*Item Fifth.*—It is my will and desire, and I so direct, that my executors, hereinafter named, do sell all my lands in the State of North Carolina, including about one hundred and fifty acres, near Old Mark's Creek church, in Richmond County, and the Eli Smith tract, of about one hundred and eighty acres, and that the proceeds of such sale be divided among my said children, share and share alike, the child or children of any dying, to take its or their parent's part.

"*Item Sixth.*—It is my will and desire that my executors, hereinafter named, do make sale of all my personal property, except such as my said wife may elect to keep, and out of the proceeds pay the obligations, and so forth, named in Item First hereof, and also the expenses of executing this will, and that they divide the remainder among my said children, share and share alike, the children of any dying to take the portion of their parent.

"*Item Seventh.*—The proceeds of sale of the home place to be divided as stated in Item Third above, are not to be subject to the limitations of Item Fourth, as regards the shares of my said daughters.

"*Item Eighth.*—I hereby appoint my trusted friend, Daniel J. Odom, and my sons, Robert and Thomas, executors of this last will, and I empower them to make titles under the sales hereinbefore provided for to the purchasers; and in case one or more of them should die before making such titles, or any one should not qualify, I empower the remaining executor or executors to carry out the provisions hereof and make such titles.   And they are to act in all respects under the counsel

of my trusted friend and kinsman, H. H. Newton, as their attorney.

"In testimony whereof I have hereunto set my hand and affixed my seal the 21st day of October, A. D. 1899.

his<br>
"Younger X Newton.    (Seal.)"<br>
mark.

*Messrs. H. H. Newton* and *T. W. Boucher,* for appellants, cite: *Plaintiffs are entitled to remedy sought:* Code, 1902, 3062, 3057, 3060; 18 S. C., 182. *Sec. 1927, Rev. Stat., fixed relation of landlord and tenant:* 2 McC., 756; 1 Bail., 497; 1 Strob., 134.

*Mr. Knox Livingston,* contra, cites: *Under the will each child held a license coupled with an interest:* 18 Ency., 1147; 23·S. C., 17; 2 Hill, 534; 11 Rich., 621; 12 Rich., 314. *If Mrs. Odom had only life estate, crops go to personal representative:* Code, 1902, 2539-40; 1 Bay, 503; 2 McCh., 84; 1 Hill Ch., 193; 1 Strob. Eq., 370; 3 Strob., 21. *If petitioners entitled to double rent, they cannot invoke this remedy:* Code, 1902, 2411; 5 Rich., 598; 14 S. C., 35; 15 S. C., 552; 20 S. C., 216; Code of Proc., 2; 13 S. ·C., 406; 33 S. C., 235; Code, 1902, 3057, 3062; 14 S. C., 479; 20 S. C., 4; 24 S. C., 122; 21 S. C., 155.

July 6, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. R. L. Newton and T. M. Newton instituted this proceeding August 25th, 1900, to foreclose an alleged agricultural lien for rent claimed by them as the landlords of Sarius M. Odom. Under a warrant issued by the clerk, the sheriff of Marlboro County seized certain crops, and Odom moved before his Honor, Judge Watts, to vacate the warrant on the following grounds:

"First. Because said warrant was irregularly issued, in that the affidavit upon which same is based is insufficient in this—1st. That it shows upon its face that no such relation

as landlord and tenant existed, or now exists, between the plaintiffs and the defendant. 2d. That it shows, and attempts to show, no contract, either express or implied, for the leasing or renting of any lands by plaintiffs to defendant for agricultural or other purpose, and no amount due under any such contract. 3d. That the alleged claim of plaintiffs arising as set up in said affidavit, even if correct, is not such a claim as the statutes of this State authorize the issuance of a warrant of attachment or seizure to enforce the collection of. It is neither fixed by contract or by law until it has been recovered in an action brought for that purpose in a court of competent jurisdiction.

"Second. Because said warrant was improvidently issued, in that the facts stated in the affidavit of plaintiffs are not true in this: 1st. That it absolutely is untrue that defendant had, before the issuance of said warrant, disposed of any part or parcel of his crops, or was about to do so, for the purpose of defeating the alleged lien of plaintiffs. On the contrary, the defendant had been advised that plaintiffs had no just claim, and certainly no lien enforceable by attachment against his crops. 2d. That it is not true that plaintiffs were, or are, entitled to the possession of the lands mentioned in their affidavit, but the defendant is justly, rightfully and legally in possession thereof, and owes the plaintiffs nothing by reason thereof."

Judge Watts made an order vacating the warrant of seizure and all proceedings taken thereunder, stating as his reason, "I am satisfied that the claim set up by the plaintiffs, even admitting the validity and justice of such claim, is not such a one as under our statute will entitle, or did entitle, them to the drastic remedy provided under section 2517 of the Revised Statutes of 1893." The appeal is from this order. A motion was made in this Court by respondent to amend the "case" by adding certain other grounds upon which the Court would be asked to sustain the order of the Circuit Judge. It is not necessary to pass upon the positions taken by appellants in opposition to this motion, because,

upon careful examination of the grounds upon which the motion to vacate was made, we think all the questions argued by respondent in this Court fairly arise, and the propositions submitted as additional grounds are merely additional reasons upon which respondent thinks the positions taken before Judge Watts should be sustained. Indeed, there are only two questions involved in the controversy: First, did appellants and respondent sustain to each other the relation of landlords and tenant either by express contract or by contract imputed to them by law, with respect to the land and crop referred to in the proceeding? Second, if such relation did exist, were there any obligations growing out of it constituting a lien on the crop enforceable by warrant issued under chapter XCIX., article 4, of Revised Statutes of 1893? The grounds of respondent's motion before Judge Watts are broad enough to cover these questions. It is needless to say this Court must consider all the statute law of the State bearing on these issues, whether referred to by counsel in the Court below or not. For these reasons the motion of respondent is denied.

The claim of R. L. Newton and T. M. Newton for rent is based on the will of Younger S. Newton, their father, probated on December 21st, 1899, which should be set out in full in the report of this case. In the second clause of the will, testator made a general devise to his wife of all his lands for her life, "subject, however, to the provision hereinafter made out of the same for my children." Language could hardly make it clearer that any devise of land made to the children would take from the wife's life estate the land so devised. The question is, how is the wife's life estate affected by the third clause of the will, and what interest do the children take? This clause is as follows:

"I give, bequeath, and devise the interest in remainder after the termination of said life estate in my said lands to my children, Lucy Ellen Odom, Mary Frances Terry, Robert L. Newton, and Thomas M. Newton, and they are each to have the portion laid off to him and her without rent during

the life of my said wife, and after death such portion laid off
to each is to belong to him and her, and then the remainder of
the lands is to be sold and the proceeds equally divided among
my said children, share and share alike."

Respondent contends this gave the children a mere irrevo-
cable license, the wife holding the life estate. It seems from
the language here used that testator had already laid off to
each of his children a tract of land. In terms, the devise of
these lands to them is in remainder after termination of his
wife's life estate, but they are to have the entire beneficial·
interest. They are to occupy free of rent during the life of
the wife, and at her death each tract is to go to the child to
whom it had been set apart. The wife was left no control of
these lands or beneficial interest in them. The provision that
the children should occupy free of rent during the life of the
wife gave them a life estate for her life. 3 Washburn on
Real Property, 565 ; 2 Jarman on Wills, 404 ; *Schermerhorne
v. Schermerhorne,* 6 John Ch., 70 ; *Smith* v. *Poyas,* 1 DeS.,
156. In the second clause of the will, the testator declared
his intention that whatever interest his wife took should be
subject to the provision for the children. The wife and the
children could not have the life estate at the same time. The
will gives the wife no beneficial interest ; and whatever empty
legal title the testator may have thought of giving her was to
be subject to the right of the children. The widow, there-
fore, took no interest in the lands set apart to the children.
The sons had under the third clause of the will, as we have
seen, a life estate in the lands laid off to them, and as the re-
mainder in the same was devised to them absolutely, they
took a fee simple title to the lands so set apart to them.

One of the daughters, Lucy Ellen, wife of the respondent
herein, died on March 9th, 1900, without issue, during the
lifetime of her mother; and the next question is, did the land
occupied by her pass under the fourth clause of the will to her
heirs for the life of her mother, or to her mother for life, or
directly to her brothers in fee? We think there is no doubt

the brothers took the fee at once. The fourth clause of the will is as follows:

"The land which I devise in third clause above to my daughters, Mary Frances and Lucy Ellen, I give to them on the condition that should they, or either of them, die leaving no issue of their bodies, them or either of them surviving, that the same revert to my estate and go under the terms of this will to my said sons, share and share alike; the child or children of either of said sons dying to take his share; but if either of my said daughters leaves issue her surviving, such issue is to take the portion given to the mother represented by them."

The wife is not mentioned in this clause. In the event of either daughter dying without issue, it is not provided the land set apart to her shall go into any life estate, but shall revert to the testator's estate and go under the terms of the will immediately to the sons. Lucy Ellen, therefore, took an estate for the life of the mother, subject to be lessened by her own death without issue, in which event the land passed in fee directly to her brothers. Lucy Ellen having died without issue, her brothers, the appellants, at the time this proceeding was instituted, held a fee simple title to the land occupied by her at the time of her death.

Taking this view of the will, on March 21st, 1900, immediately after the death of Mrs. Odom, the appellants made a written demand on the respondent, her husband, for the surrender of the premises. This demand was not heeded, and on August 25th, 1900, the appellants instituted this proceeding under the agricultural lien law to collect of him double rent under the following act of 1808, Revised Statutes of 1893, section 1927: "All tenants, whether for life or years, by sufferance or at will, or persons coming in under or by collusion with them, who, after the legal determination of their estates, shall hold over for the space of three months after demand made in writing for delivering possession thereof by the person having the reversion or remainder therein, or his agent, shall forfeit double the

value of the use of the premises, recoverable by action."
Leaving out of view for the present the question of procedure
involved, the important inquiry is, whether these parties
stood in such relation to each other as to make this statute ap-
plicable.     Odom rented out all of the land for the year 1900
to other parties, except about six acres which he cultivated
himself.     Inasmuch as the record states these rent contracts
were made for the year 1900, it is fair to infer they were for
the entire year 1900, and so must have been entered into by
Odom at the beginning of the year, as is usual; and as his
wife was then alive, the contracts must have been made by
him in her right.     Such a case manifestly falls under sec-
tions 1924, 1925 and 1926 of Revised Statutes of 1893
(*Freeman* v. *Tompkins,* 1 Strob. Eq., 54), and section 1927,
upon which appellants rely, has no application.     If this is the
correct view, then upon the death of Mrs. Odom, the rent
owing by the tenants under these contracts became immedi-
ately the property of the appellants, who are remaindermen,
and of the personal representative of the life tenant in the
proportion fixed by section 1925.     The remaindermen would
have to look to the under-tenants for rent, and not to Odom,
who had under the law no control of their crops or responsi-
bility for their rents.

We think the crop on the six acres cultivated by Odom
manifestly belonged to the personal representative of the life
tenant.     Section 2049 of Revised Statutes of 1893 is as fol-
lows: "If any person shall die after the first day of March
in any year, the crop on the lands which were in the occupa-
tion of the deceased shall be assets in the executors' or admin-
istrators' hands, subject to debts, legacies and distribution,
the taxes and cultivation of such crop being first paid."
Reading this section in connection with section 1927, provid-
ing double rent to remainderman from party in possession
who refuses on death of life tenant to surrender to remain-
derman, it seems clear that the latter section has no applica-
tion to agricultural lands under the conditions mentioned in
the former section.     The remainderman is not entitled in

such case to possession, but the crop and the possession of the land necessary to its cultivation go to the personal representative of the life tenant.    Nor do we think it was necessary. to show that the crop had been planted prior to the death of Mrs. Odom.    The law is based on the idea that by the first of March the crop has been planted or provision has been made by the life tenant to plant, and money and labor expended in carrying out his plans; in other words, that where the life estate of one in legal possession is ended by death after the first of March, the arrangements for the agricultural year have so far progressed that a change of possession would result in loss to the life tenant.    This view is suggested by Chief Justice McIver in *Huff* v. *Latimer,* 33 S. C., 257, 11 S. E., 553.    For the reasons stated in the foregoing discussion, we conclude the appellants had no legal claim as landlords against the respondent as tenant.    But aside from this view, even if they had such a claim, the statute conferring the right they claim provided the remedy, and this remedy must be regarded exclusive.    The act on which appellants based this proceeding originally provided that the double rent mentioned should be "recoverable by action of debt or other legal action, or by distress, as in cases of rent reserved and payable quarter yearly."    As it appears in the Revised Statutes, all the words after "recoverable by action" are left off. The remedy having been provided by the same statute that established the right, it must be held exclusive.    *McLaughlin* v. *R. R. Co.,* 5 Rich., 598; *Sternberger* v. *McSween,* 14 S. C., 35; *Kennedy* v. *Reames,* 15 S. C., 552; *Gibbes* v. *Beaufort,* 20 S. C., 216.

Appellants, however, insist that while this is the general rule, inasmuch as the statute has been held to impute to the person holding possession after receiving the notice provided by the act a contract to pay the rent to the remainderman (*Talvande* v. *Crippe,* 3 McC., 156), such contract falls under the agricultural lien law, and is enforceable by the special proceeding therein provided; that is, that the special proceeding is a cumulative remedy, and that the remainderman may

elect between that remedy and an action as provided by stat-ute. This argument is forcible but not convincing. The lien given by the agricultural lien law cannot be enforced by action but only by the special proceeding which that law sup-plies. How, then, can the lien law be held to supply a rem-edy for the enforcement of a right created by another statute, when the statute by which the right is brought into existence provides a different remedy? The right given by the statute under consideration imputes to one remaining in possession of land a very onerous contract, often against his consent and when he *bona fide* denies the right of the claimant. Those claiming its benefit must be confined to the remedy it pro-vides.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.